### TRUANCY OF A CHILD OF A CONSCIENTIOUS OBJECTOR.

Common Pleas Court of Logan County.

TROYER v. STATE.

Decided, June, 1918.

*Construction of the Truancy Statute—Attendance at School means "Attendance" in Good Faith and Compliance with the Reasonable Rules of the School and Participation in the Exercises Provided by the School Authorities.*

1. The statute providing for criminal proceedings against a parent or other custodian, in the event of the truancy of a child under his care, contemplates, not that the child be merely sent to the scl house or school room for the purpose of being sent away for fusal to obey, but that the child shall *attend* and obey and participate in the reasonable exercises provided for the pupils by those in charge of the school, and the statute is not satisfied by the mere appearance at school by a pupil who has been instructed by the custodian to disobey, and refuses to participate in the exercises.

2. A "conscientious objector" who has been convicted a second time for failing to cause his child to attend school, by sending the child to school with the instruction not to participate in patriotic exercises provided for the pupils, including a salute to the flag, knowing the child would be sent from the school room, and the instruction was carried out, will not be saved by a reviewing court from the pains and penalties of the statute pronounced upon him by the court below.

HOVER, J.

Ora Troyer was arrested on an affidavit filed by H. M. Black, truant officer for the village of West Liberty, Logan county, Ohio, in the court of Hon. John C. Rock, mayor of said village of West Liberty, Ohio, charging that the defendant below, on

the 13th and 14th days of May, 1918, failed, neglected and refused to cause Ruth Troyer, a nine-year-old child in his care and custody, to attend school.

The record further discloses that prior to the date above given, said Troyer was arrested on the same charge, pleaded guilty and was fined; that he paid the fine and costs. Defendant below was, therefore, charged in this instance with having violated the statute, after a former conviction, as a second offense. Trial was had and defendant was convicted and sentenced to imprisonment for twenty-five days in the jail of the county.

Error is prosecuted on seven assignments. The assignment of error relied upon is the fifth, to-wit, that said plaintiff in error was found guilty, when he should have been acquitted.

The record discloses that plaintiff in error is of the Mennonite faith and is opposed to defending his country in time of war; that the child, Ruth Troyer, is a girl about nine years of age; that there is an orphange in the village of West Liberty, conducted and maintained by said Mennonite church and that a school room is provided in the orphanage; that the school board of said village furnishes a teacher and public school is conducted in the said Children's Home.

The record further discloses that plaintiff in error moved his family into the orphanage on the 5th day of April, 1918, and occupied rooms just across the hall from the school room; that certain patriotic teachings and exercises were required by Mr. Stanley, superintendent of schools of West Liberty; that Miss Edna Cook, the teacher in the orphanage, faithfully endeavored to execute the superintendent's orders; that the exercise contained in it certain words known as the pledge of allegiance and a physical salute to the flag.

On the trial of the first offense, it appears that defendant below kept the child away from the school room, but after having pleaded guilty and paid the fine, he instructed the child to go to school in the morning, and if she was sent out of the room by the teacher for refusing to obey the rule as to the exercises, to stay out until after the noon recess and then go to school again. The child went to school in the morning, would refuse to obey the rule, would be sent out by the teacher, she would

return to school after the noon recess, refuse to obey the rule, and would be sent out again. This continued constantly from the time of the first arrest until the time of the arrest in this case.

It is urged by counsel for plaintiff in error that he sent the child to school and that, having sent her, he is not amenable to the law for the child's having refused to obey the rule as to the exercises.

Section 7773, General Code, provides:

"On the request of the superintendent of schools or the board of education, or when it otherwise comes to his notice, the truant officer shall examine into any case of truancy within his district, and warn the truant and his parents, guardian or other person in charge, in writing, of the final consequence of truancy if persisted in. When any child between the age of 8 and 15 years, or between the ages of 15 and 16 years, in violation of the provisions of this chapter, is not regularly employed and is not attending school, the truant officer shall notify the parent, guardian or other person in charge of such child, of the fact and require such parent, guardian or other person in charge, *to cause the child to attend some recognized school within two days from the date of the notice,* and it shall be the duty of the parent, guardian or other person in charge of the child *so to cause its attendance* at some recognized school. Upon failure to do so, the truant officer shall make complaint against the parent, guardian or other person in charge of the child, in any court of competent jurisdiction in the city, village or rural district in which the offense occurred for such failure."

The statute is not complied with when a parent or other person having the care and custody of a child within the school age, sends it to the school house or school room. The law is that such person "cause the child to attend school."

Why the truant law, and the requirements of adults having the care of children to cause them to "attend school?" The only answer is that they, the children, may escape illiteracy, and that they may receive education.

This case is one where the child was trying to serve two masters. She says Mr. Troyer told her not to saulte the flag. This question was asked the child: "What did your father say, if anything, about saluting the flag?" Answer: "He said I should not."

This court believes that statement of the little girl, as no doubt the court below believed her; and, that being true, she was put in fear by the command at home, and, as between the two masters, chose to be sent, harmless in the corporal sense, from the school room. It would require a strange process of reasoning to condemn a child as incorrigible under such circumstances.

What would have been the result had plaintiff in error instructed the child to salute the flag and to participate in the school exercises? There can be but one answer. What would have been the result had the little girl received no instruction on this point from defendant below? Every one knows that the result would have been cheerful compliance. There is no instinct in the heart of the native-born American child to show disrespect, disloyalty and rebellion against the beautiful banner which symbolizes American independence, its free institutions and the glory of this great nation. The child was told by defendant below not to salute the flag in the school exercise, which exercise was required by proper officials of one of the best of our free institutions, the public school, and this instruction was given by the foster father in the time of war, at a time when the rich blood of the free men is being shed, that our nation may remain free and its institutions may be preserved; and to manifest this spirit of rebellion, the child was deprived of its right to attend school and receive proper instruction and education.

Such conduct on the part of our citizens is not conscionable, for conscience would lead to respect for government and to its defense, especially in time of war, but rather it is the forerunner of disloyalty and treason. All true Americans are conscientiously opposed to war, but when war is upon us, we will fight and fight until the victory over our enemy is won.

The court finds no error in the proceedings below, and the petition in error is dismissed at the costs of the plaintiff in error, and the case is remanded to the court below for execution.